Wayne W. Mink, Plaintiff in Error,

*v.*

City of Memphis et al., Defendants in Error.

435 S.W.2d 114.

(*Jackson*, April Term, 1968.)

Opinion filed November 22, 1968.

RUSSELL X. THOMPSON, Memphis, for plaintiff in error.

JAMES M. MANIRE and FRIERSON M. GRAVES, JR., Memphis, for defendants in error.

MR. JUSTICE DYER delivered the opinion of the Court.

This case presents the question of whether the Commissioners of the Memphis Housing Authority serve at the will and pleasure of the Mayor, acting with the concurrence of a majority of the Council, or does their removal require written charges proffered and a hearing afforded. The trial court found such Commissioners could be removed at the will and pleasure of the Mayor, acting with the concurrence of a majority of the Council.

The facts are not disputed and those necessary to note are as follows: On December 13, 1967, the Mayor of Memphis, to fill a vacancy thereon, appointed Mr. Wayne W. Mink as a Commissioner of the Memphis Housing Authority, with his term to expire June 25, 1969. In January, 1968, the Mayor of Memphis with concurrence of a majority of the Council removed Mr. Mink as a Commissioner of the Memphis Housing Authority. It is not disputed Mr. Mink was removed without written charges being placed against him, nor was he afforded a hearing. Mr. Mink challenges the authority of the Mayor and Council, without written charges or a hearing, to remove him from this office.

The Memphis Housing Authority was created in 1935, pursuant to an amendment to the Charter of the City of Memphis, being Chapter 615, Private Acts of the General Assembly in 1935. Under this authority the Mayor of Memphis appointed the Commissioners of the Memphis Housing Authority and their removal was by the Mayor, but only after written charges proffered for neglect of duty or misconduct in office and a hearing afforded.

In 1963 the City of Memphis, pursuant to Article 11, Section 9, of the Constitution of Tennessee, became a Home Rule Municipality. Acting in accord with the method provided for home rule municipalities, the City of Memphis, on November 8, 1966, amended its Charter. These charter amendments, among other things, provided for a change in the form of government from commission form to Mayor-Council form. Although the record is not clear on this point these 1966 charter amendments apparently became effective January 1, 1968. These 1966 Charter amendments pertinent to the issues here are as follows:

That the Mayor shall appoint the members of all Boards and Commissions, set appointments to be made with the approval of a majority of the Council; the removal of all members of Boards and Commissions shall be effected in the same manner and subject to the same procedures provided for Directors.

A Director shall be subject to removal by the Mayor with the concurrence of a majority of the Council.

If the language of the above charter amendments is to control there is no question but that a Commissioner of the Memphis Housing Authority serves at the will and pleasure of the Mayor of Memphis upon a concurrence of a majority of the Council.

By Chapter 20, Public Acts of 1935, First Special Session, the General Assembly enacted statutes of a general nature relating to housing authorities. These statutes as amended are now carried in T.C.A. as Title 13, Chapters 8 through 12. On this issue of removal of commissioners of housing authorities, these general statutes are almost identical with the City of Memphis charter amendment, Chapter 615, Private Acts of 1935. That is, the general statutes require written charges and a hearing. The argument here is that the 1966 City of Memphis charter amendments on this issue of removal of commissioners of the Memphis Housing Authority are in conflict with the general law on this subject with the result that these charter amendments will have to give way to the general law under Article 11, Section 8, of the Constitution of Tennessee.

In the case of *Nashville Electric Service v. Luna,* 185 Tenn. 175, 204 S.W.2d 529 (1947), one of the issues made

was in regard to the suspension of a general law by a Private Act. On this point the Court said:

> However, Chapter 33 (Public Act) does not require any city to operate its plant under that Act. As a matter of fact, many of our municipalities are operating under special Acts, amendatory of their charter, or otherwise. This being true, the provisions of Article XI, Section 8 of the Constitution do not apply, because "there is no constitutional inhibition against special legislation as to municipal corporations", *Tennessee Public Service Co. v. City of Knoxville,* 170 Tenn. 40, at page 53, 91 S.W.2d 566, 570, unless such special law is contrary to a general law mandatorily applicable to all municipalities alike. *Town of McMinnville v. Curtis,* 183 Tenn. [442] 448, 449, 192 S.W.2d 998.

185 Tenn. at 188, 204 S.W.2d at 534.

The *Town of McMinnville v. Curtis,* supra, cited as authority for the decision in *Nashville Electric Service v. Luna,* supra, involved a Private Act relieving the citizens of McMinnville from payment of a poll tax as a prerequisite to voting in municipal elections. The general law at that time required the payment of a poll tax as a prerequisite to voting in any election, municipal or otherwise. The issue was whether this Private Act was in conflict with the general law on the same subject within the meaning of Article 11, Section 8, of our Constitution. This Court, inter alia, found that this Private Act was in conflict with the general law on the same subject within the meaning of Article 11, Section 8, since the general act was mandatorily applicable to all municipalities of the state.

■ The rule above enunciated in *Nashville Electric Service v. Luna,* supra, and the cases therein cited, is based on the fact our Constitution contains no inhibitions against special legislation affecting municipalities and that Article 11, Section 8, does not prohibit special legislation affecting municipalities unless there be a general law on the subject in conflict with the special legislation and mandatorily applicable to all municipalities. On the issue here of removal of Mr. Mink as a Commissioner of the Memphis Housing Authority the general law in regard thereto, T.C.A. 13-911, is in conflict with the 1966 City of Memphis charter amendments on this subject. The question is then posed: Is this general law mandatorily applicable to all municipalities?

■■ We do not think the general law on housing authorities is mandatorily applicable to any municipality. These statutes are authority for municipalities to establish a housing authority, which a municipality may or may not accept. It results the 1966 City of Memphis charter amendments, under which Mr. Mink was removed from office, are not in conflict with Article 11, Section 8, of our Constitution.

■ The Home Rule Provision of our Constitution, Article 11, Section 9, provides that where a municipality has adopted Home Rule no charter provisions (with exception not pertinent to the case at bar), shall be effective if inconsistent with any general act of the General Assembly. We construe this provision of Article 11, Section 9 to mean any general act of the General Assembly mandatorily applicable to municipalities.

We have considered the other assignments of error and find them without merit.

The judgment is affirmed.

BURNETT, CHIEF JUSTICE, and CHATTIN, CRESON and HUMPHREYS, JUSTICES, concur.